# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

––––––––––––––––––

Nº 10-CV-3216 (JFB)

––––––––––––––––––

RAUL IZAGUIRRE,

Petitioner,

VERSUS

WILLIAM LEE,

Respondent.

––––––––––––––––––

**MEMORANDUM AND ORDER**
April 25, 2012

––––––––––––––––––

JOSEPH F. BIANCO, District Judge.

Raul Izaguirre (hereinafter "Petitioner") petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction in the County Court, Nassau County, State of New York. Petitioner was convicted in a judgment rendered on September 9, 2005, following a jury trial, of Manslaughter in the First Degree (N.Y. Penal Law § 125.20(1)) and was sentenced to twenty-five years in prison followed by five years of post-release supervision. In the instant petition, Petitioner challenges his conviction, claiming his constitutional rights were violated because: (1) the County Court improperly attempted to persuade him to plead guilty; (2) the County Court's sentence was harsh, excessive, and retaliatory; and (3) the evidence was legally insufficient to support his conviction for First-Degree Manslaughter.

For the reasons discussed below, the petition is denied in part and granted in part. Petitioner's claim that there was insufficient evidence to support his conviction is procedurally barred and, in the alternative, fails on the merits. Petitioner's claim that the County Court improperly advocated on behalf of the State to get Petitioner to enter a guilty plea is also without merit. Petitioner's claim that his sentence was excessive is without merit, but his contention that the state court unreasonably applied clearly established federal law on his vindictive sentence claim is meritorious, and warrants the granting of

habeas relief unless the State of New York grants Petitioner a re-sentencing within ninety days by a judge other than the one who delivered the sentence at issue.

As discussed in detail *infra*, with respect to the vindictive sentence claim, the state court unreasonably applied clearly established Supreme Court jurisprudence for a vindictive sentence claim to the facts of the instant case. The Supreme Court rule, that has been well established for decades, is that a presumption of vindictiveness arises in cases where an "action detrimental to the defendant has been taken after the exercise of a legal right" by the defendant under circumstances in which "a reasonable likelihood of vindictiveness exists." *United States v. Goodwin*, 457 U.S. 368, 373 (1982). After a careful review of the record, this Court concludes that this case is precisely one of those cases. Here, there was a reasonable likelihood of actual vindictiveness by the sentencing judge because she announced, prior to trial in the context of plea discussions, that Petitioner would receive the statutory maximum of 25 years' imprisonment if he were to be convicted at trial: "Mr. Izaguirre, do you understand that if you are found guilty after this trial you *will* do 25 years in prison?" (T. 7.)[1] (emphasis added). This unequivocal, pre-trial statement that the Court would impose the maximum sentence, even though it was not mandatory, created a presumption of vindictiveness once the statutory maximum was, in fact, imposed at the time of sentencing. That presumption was not rebutted by any other objective information in the record. To the contrary, other portions of the record provide further support for this claim. First, the prosecutor

did not ask for the statutory maximum of 25 years at sentencing, but rather a sentence of "no less than 15 years in prison." (S. 3.) Second, the court provided no explanation for how it arrived at the statutory maximum at sentencing other than an extremely brief reference to the young age of the victim. Although the Respondent attempts to rely on the surrounding context to minimize or re-interpret the unequivocal pre-trial statement by the judge that she would impose the maximum if the defendant were convicted after trial, those arguments are entirely unpersuasive to rebut the presumption of vindictiveness triggered by that pivotal statement. In fact, the context gives more, not less, support for the vindictiveness claim. In particular, the pre-trial statement by the court that the petitioner "will" receive the statutory maximum was in the context of the court, at defense counsel's urging, attempting to make the petitioner aware of the advantages of pleading guilty and the perils of going to trial. Thus, the court's pre-trial statements surrounding the explicit prediction of the imposition of the statutory maximum after trial are equally troubling, and included the following: (1) "The prisons are filled with people who were convicted of crimes where there was no eye witness, and they are filled with people who feel they were wrongfully convicted because there wasn't enough evidence, or who have convinced themselves that there wasn't enough evidence. Those people are not necessarily the kind of people you want to spend the next 20 years of your life with."; (2) "You are a very young man. You also have an immigration hold. You will probably, if you get convicted, never see daylight again, because you will probably sit in a New York State facility for at least 20 years and then be deported to . . . Honduras, and I don't know what they will do to you in Honduras after having served a prison sentence here."; and (3) "Your best chance is, if you

---

[1] "T." refers to the trial transcript, "H." refers to the pre-trial hearing transcript, and "S." refers to the sentencing minutes.

wish to plead guilty, is to enter a plea, take the ten years, and hope they will forget about your immigration hold…." (T. 7-9.)[2] These comments hardly rebut the presumption of vindictiveness that arose from the central statement that the court intended to impose the statutory maximum if convicted. In short, although this Court is well aware of the deferential standard of review on a habeas petition, the record in this case on the vindictive sentencing claim reflects an unreasonable application of clearly established federal law as determined by the United States Supreme Court and requires habeas relief unless the Petitioner is re-sentenced by a different judge.

## I. FACTUAL BACKGROUND

The Court has adduced the following facts from the instant petition and the underlying record.

At approximately 5:30 a.m. on June 24, 2003, the body of Marvin Valle ("Valle") was found dead on a sidewalk at the corner of Fulton and Meadowbrook Avenues in Hempstead, New York. (T. 455-56.) An ensuing police investigation revealed that on the previous night, June 23, 2003, Valle had been out drinking with a boyhood friend of his, Juan Antonio Maldonado ("Maldonado"). (T. 663, 666-68.) After drinking beer in several bars in and around Hempstead, the two men arrived at an establishment called the

Ilusiones bar shortly after midnight.[3] (T. 667-68.) Also present in the Ilusiones bar at that time was Petitioner. (T. 669.) Maldonado, who knew Petitioner from their work together in a local supermarket, introduced Petitioner to Valle and the men exchanged greetings inside the bar. (T. 669-72.) Shortly thereafter, a disagreement between Petitioner and Valle over the payment for beers escalated into a physical altercation, which resulted in Petitioner receiving a bloodied nose from Valle. (T. 675, 769-72, 832-35.) The altercation provoked many of the bar's patrons to flee the premises, and Valle and Petitioner were consequently escorted out.[4] (T. 677, 451-52.)

Hours later, at around 5:30 a.m., Hempstead Police responded to a radio call indicating that there was a "man down" on the corner of Fulton and Meadowbrook Avenues. (T. 455.) Responding officers discovered Valle, face-up on the sidewalk in the vicinity of Ilusiones bar, with multiple stab wounds to

---

[2] As discussed in detail *infra*, the reference to 20 years would reflect the amount of time, after good time credit and time already served, that Petitioner likely would have left to serve on a twenty-five year sentence. Thus, after accounting for these issues, there is no basis to conclude that the reference to 20 years during this discussion was anything other than a re-calculation of the stated 25-year intended sentence.

[3] Ilusiones bar is located at 774 Fulton Avenue at the corner of Fulton Avenue and Courtenay Road in Hempstead, New York. (T. 452.)

[4] Hempstead Police Officer Darryl Aiken testified that, around 1:00 a.m., he was on routine patrol on Fulton Avenue near the Meadowbrook Avenue intersection when he observed a crowd running out of the Ilusiones bar and decided to pull over. (T. 451-52.) Before exiting his patrol car, Officer Aiken called over his radio for another squad car to report to the disturbance. (T. 452.) Upon approaching the bar, Aiken was informed by security that a fight had taken place inside. (T. 453.) Aiken observed chairs and broken glass on the floor. (T. 453.) The security guard, later identified as the bar's owner, Jesus Romero, told Aiken that the individuals involved in the fight had since left. (T. 453.) After returning to his patrol car, Aiken observed the scene for another five to ten minutes before driving away, heading west on Fulton Avenue. (T. 454.) Officer Aiken would later return to the area to find Marvin Valle dead. (T. 455-57.)

his body and abrasions on his face and scalp. (T. 518-20, 538-39, 1057.) Valle suffered, among other injuries, a fatal stab wound to his chest that reached a depth of five inches, penetrated two of his ribs, and perforated both his heart and left lung. (T. 995, 999, 1001-02.) Valle was pronounced dead at approximately 5:41 a.m. on the morning of June 24, 2003.[5] (T. 586.)

Later, on the same day, Petitioner showed up for work at Uncle Guiseppe's supermarket. (T. 789, 791.) At approximately 12:30 p.m., Melvin Alvarado Bonilla ("Bonilla"), another supermarket employee, was on his lunch break when he overheard Petitioner having a conversation on a public pay phone outside of the market on Hempstead Turnpike. (T. 792.) Bonilla testified that Petitioner was speaking with his cousin Antonio Izaguirre ("Antonio"). (T. 792.) The sum and substance of this conversation involved an explanation by Petitioner to his cousin that: (1) he had purchased a dagger the night before; (2) he had subsequently gone to a bar; (3) while inside the bar, someone hit him in the face, causing him to observe blood on his hand; and (4) he then took out the dagger and stabbed the person.[6] (T. 792-93.) Bonilla further testified that he heard Petitioner ask his cousin, "What do I do?" (T. 793.) Neither Bonilla nor the supermarket's manager saw Petitioner at work or anyplace else after that. (T. 792-93, 861-63.)

A day later, on June 25, 2003, Petitioner visited his cousin Antonio's apartment at 753 Front Street in Hempstead. (T. 850-51.)

Petitioner used the phone in Antonio's bedroom to place a telephone call to another cousin, Griselda Molina Izaguirre ("Griselda"). (T. 851-52, 1012, 1027.) According to Griselda, Petitioner asked her to loan him two hundred dollars because "he had to leave" and "that he had some problems." (T. 1012-14.) Griselda also testified that Petitioner "told [her] he had stabbed someone, but didn't know what had happened to him [the stab victim]." (T. 1022.) Jose Martinez, a tenant in the apartment from which Petitioner placed the telephone call to Griselda, overheard the conversation from the next room. (T. 851-52.) Martinez testified that Petitioner told Griselda that he needed money "because he had some trouble." (T. 851-52.) Martinez subsequently contacted the police to report what he had heard. (T. 853.)

On June 26, 2003, Demetrios Kerasiotis ("Kerasiotis"), the manager of the supermarket at which Petitioner was employed, was performing inventory in the store and began to straighten up Petitioner's former work station when he discovered a black folding knife hidden on a shelf above Petitioner's station. (T. 864-65.) Aware of the ongoing police investigation into Petitioner, he notified his supervisor of his discovery and the two proceeded to contact the police.[7] (T. 865.) Nassau County Police later determined the knife to be four inches long and one inch wide. (T. 914.) Forensic DNA-testing revealed that Valle's blood matched the blood on that knife. (T. 1200-02.)

In furtherance of its investigation, the Nassau County Police Department determined that a Greyhound bus had left Hempstead on

_____

[5] Valle was twenty years old at the time of the stabbing. (T. 509.)

[6] Bonilla was an acquaintance of Petitioner's cousin, Antonio, as the men lived together in an apartment in Hempstead. (T. 794.)

[7] Although Petitioner was employed as a butcher in the supermarket and often worked with knives to prepare certain dishes, Kerasiotis testified that it was not normal for a knife like the one discovered above Petitioner's workstation to be there. (T. 873.)

June 25 – the same day Petitioner asked to borrow two hundred dollars from his cousin Griselda – and was scheduled to arrive in Miami, Florida on June 27. (H. 336-40.) Suspecting that Petitioner had borrowed the money from Griselda to flee New York, Nassau County police furnished homicide detectives from the Miami-Dade Police Department with a photograph of Petitioner and enlisted their assistance in his arrest. (T. 952-55.) Accordingly, Miami police officers waited for, and later apprehended, Petitioner as he exited the bus in Florida. (T. 954-957.) Upon disembarking the bus, Petitioner was approached by the Miami-Dade police officers, who asked for his name. (T. 956.) Petitioner falsely responded that his name was "Manuel," only to subsequently present a resident alien card bearing his true name. (T. 956-57.) Petitioner was then taken into custody. (T. 957.) On July 11, 2003, Nassau County detectives traveled to Florida for the purpose of taking Petitioner into their custody and accompanied him back to New York. (T. 1054-55.) Petitioner was indicted in County Court, Nassau County on two counts of murder in the second degree: one count for an intentional killing pursuant to New York Penal Law Section 125.25(1), and a second count for a depraved indifference killing pursuant to Penal Law section 125.25(2).

II. Procedural Background

A. State Court Proceedings

1. Plea Bargaining and Trial

Prior to trial in County Court, the Nassau County District Attorney's Office engaged in substantial plea bargaining with Petitioner. In return for his willingness to enter a plea of guilty, the People offered to reduce Petitioner's criminal charge to a class C violent felony, punishable by a sentencing range of three-and-one-half to fifteen years in prison. (T. 5.) According to Petitioner, the State offered to recommend an eight-year prison sentence and two years of supervised release. (Pet.'s Mem. of Law at 7, Nov. 19, 2010, ECF No. 15-2; T. 34 (Petitioner's counsel recounted that he was informed "by the assistant district attorney that the People would advance the defendant a further opportunity to enter a plea of guilty to a lesser charge on a conditional sentence, condition being that the defendant be sentenced to eight years. I understand that that was with the consent of the deceased's family.").) Petitioner steadfastly refused to enter a guilty plea, apparently acting under the mistaken belief that he could not be convicted lest the prosecution produce an eyewitness to the killing. On the first day of trial, Petitioner's counsel, outside the presence of the jury, made a lengthy statement for the record. (T. 5-7.) Defense counsel expressed his preparedness to proceed to trial on Petitioner's case, but nevertheless indicated that he believed a guilty plea to a lesser charge would have "been in [Petitioner's] best interest." (T. 5.) The relevant portions of counsel's remarks are excerpted below:

> I told him [Petitioner], that he is a young person, that he should be able to go home and

raise his family, rather than his grandchildren, and I believe that at this point in time, right before the selection of the jury, he should reconsidering [*sic*] his options. . . .

Judge Donnino spoke with him. I, again, spoke with him, and I have expressed with him my concerns, the fact that he could be convicted based on the evidence. . . .

I believe he, in his mind, believes that under New York State law that he could not be convicted unless somebody comes in and directly indicates that they saw him stab the deceased.

I have tried to express to him the fact that's not required. I have gone through this with him numerous times explaining to him the law and the consequences of his decision.

(T. 6-7.) Counsel then went on to make clear that, notwithstanding his prior efforts to educate his client with regard to the perils of going to trial, Petitioner still had a chance to plead guilty to his crime:

He [Petitioner] has indicated to me that he understands it and that he wishes to proceed. But I want to be clear, the fact that he has this last opportunity right before the jury is brought into this courtroom to review his options, to see that this

might be in his best interest to take this disposition.

(T. 7.) Following counsel's statements, the trial judge immediately asked, "Mr. Izaguirre, do you understand that if you are found guilty after this trial you will do 25 years in prison?" (T. 7.) After Petitioner responded that he understood but maintained his innocence, the trial judge made additional remarks in an apparent attempt to correct Petitioner's possible legal misapprehension and to fully apprise Petitioner of his options:

Mr. Izaguirre, I don't know whether you are guilty or not guilty, but what your lawyer seems to feel is that you don't understand the law of the State of New York, which would make sense since you are not a lawyer and have never been in any kind of trouble before.

The prisons are filled with people who were convicted of crimes where there was no eye witness, and they are filled with people who feel they were wrongfully convicted because there wasn't enough evidence, or who have convinced themselves that there wasn't enough evidence. Those people are not necessarily the kind of people you want to spend the next 20 years of your life with.

You are a very young man. You also have an immigration hold. You will probably, if you get convicted, never see daylight again, because you will

probably sit in a New York State facility for at least 20 years and then be deported to . . . Honduras, and I don't know what they will do to you in Honduras after having served a prison sentence here.

Your best chance is, if you wish to plead guilty, is to enter a plea, take the ten years, and hope they will forget about your immigration hold. . . .

So, I hope that you understand all of these factors and you understand that the evidence is against you, there are numerous statements that they [the People] claim you made to other people in which you admitted to this . . .

I don't know whether you are guilty or not guilty, but I know that the district attorney is prepared to put forward a case . . . and only you know what the truth is here and only you know what is in your best interest.

But once I bring that jury in and we start selecting them, any question as to whether you want to plead guilty or not is going to disappear. Do you understand?

(T. 7-9.) After answering in the affirmative, Petitioner proceeded to trial by jury on February 23, 2005.

During the charge conference, which took place after both sides rested their case, the court agreed to charge the jury on the lesser included offense of Manslaughter in the First Degree pursuant to New York Penal Law Section 125.20(1). (T. 1210-12.) On March 18, 2005, the jury reached a verdict, finding Petitioner not guilty of Murder in the Second Degree and guilty of Manslaughter in the First Degree. (T. 1344.)

2. Sentencing

Petitioner appeared before the County Court, County of Nassau, for sentencing on September 9, 2005. The prosecutor requested that the petitioner receive "no less than 15 years in prison." (S. 3.) The sentencing judge, after hearing statements from counsel, Petitioner, and the victim's family,[8] lamented the loss of life resulting from Petitioner's crime:

> [Valle] was a son; he was a friend; and he was a young man just like [Petitioner] and now he will never grow old and he will never have an opportunity to have children and he will never have an opportunity to take care of his father as his father gets older.

(S. 8.) The judge sentenced Petitioner to a term of twenty-five years in prison with five years' post-release supervision. (S. 8-9.)

---

[8] At sentencing, Valle's father, Pedro Valle, addressed the court. Mr. Valle gave a short statement in which he did not request a specific sentence to be imposed, but asked that the court give Petitioner "the sentence that he deserves." (S. 5.)

### 3. Appeals

Petitioner appealed his conviction and sentence to the Supreme Court of the State of New York, Appellate Division, Second Judicial Department, on the grounds that: (1) the County Court improperly attempted to persuade Petitioner to enter a plea of guilty; and (2) the County Court's sentence was harsh, excessive and retaliatory for Petitioner's exercise of his right to a trial. In an Order dated May 20, 2008, a panel of the Appellate Division, Second Department, affirmed both Petitioner's conviction and sentence, concluding that: (1) the trial judge considered the appropriate factors in sentencing Petitioner; (2) the sentence imposed was not excessive; and (3) Petitioner's remaining contention was without merit. *See People v. Izaguirre*, 856 N.Y.S.2d 886 (App. Div. 2008). Leave to Appeal to the New York Court of Appeals was subsequently denied by Order dated November 9, 2009. *See People v. Izaguirre*, 891 N.Y.S.2d 694 (2009).

On or about April 9, 2008, Petitioner, appearing *pro se*, filed a motion pursuant to New York Criminal Procedure Law section 440.10 to vacate the County Court's judgment of conviction. (Resp.'s Ex. 5, Aug. 26, 2010, ECF No. 8-3.) He asserted there, as he does here, that the evidence at trial was legally insufficient to support his conviction. (*Id.*) In support of that contention Petitioner posited that his intoxication on the night of the killing rendered him incapable of possessing the requisite intent necessary for Manslaughter in the First Degree. By Order dated September 1, 2009, the County Court denied Petitioner's Section 440.10 motion, concluding that: (1) Petitioner failed to offer new evidence of his innocence that was unavailable at trial to support his contention; (2) Petitioner was not intoxicated to the point of being unaware of

his mental state at the time of the stabbing; and (3) in any event, Petitioner's claim was not raised on direct appeal and, therefore, was unpreserved for review on a Section 440.10 motion. (Resp.'s Ex. 2, County Court Order Dated Sept. 1, 2009, Aug. 26, 2010, ECF No. 8-4.)

### B. The Instant Petition

On July 6, 2010, Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that: (1) the evidence was legally insufficient to support his conviction because Petitioner's intoxication rendered him incapable of possessing the requisite *mens rea* for First-Degree Manslaughter; (2) the County Court improperly attempted to persuade him to plead guilty; and (3) the County Court's sentence was harsh, excessive, and retaliatory for Petitioner's decision to proceed to trial. On August 26, 2010, the Respondent filed a declaration and memorandum of law in opposition to the petition. Petitioner submitted a memorandum and declaration in reply, which were filed on November 19, 2010. On June 14, 2011, the Court conducted a conference to advise the parties that it was requesting supplemental briefing on the vindictive sentencing claim. Moreover, the Court stated that, in its discretion, it was going to appoint an attorney from the Habeas Corpus Panel of Attorneys to represent Petitioner. The Court subsequently issued an Order, dated July 6, 2011, explaining the reasons for such appointment, and appointing Kevin Keating, Esq., to represent Petitioner. On July 22, 2011, Respondent filed his supplemental brief on the vindictive sentencing claim. On August 25, 2011, counsel for Petitioner filed a

supplemental letter on that issue.[9] On December 5, 2011, Respondent requested oral argument. On March 9, 2012, with Petitioner present, the Court heard oral argument. On March 9, 2012, the Court received a supplemental letter from the Respondent. The Court has fully considered the arguments and submissions of the parties.

## II. STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254, governs applications of incarcerated state court defendants seeking federal habeas corpus relief. Pursuant to 28 U.S.C. § 2254(d), an application for a writ of habeas corpus that has met the procedural prerequisites

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law,

as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "An 'adjudication on the merits' is one that '(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment.'" *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007) (citing *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001)); *see Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006).

Once claims have been adjudicated on the merits, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); 28 U.S.C. § 2254(d)(1). Alternatively, "a federal habeas corpus court may grant the writ if the "state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies it to the facts of a Petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (*citing Williams*, 529 U.S. at 413).

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decisions applied clearly established federal law erroneously or incorrectly. Rather, that application must be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529

---

[9] On September 1, 2011, Petitioner's counsel requested permission to conduct a limited, preliminary investigation of Petitioner's claims, including interviewing two witnesses, in connection with a potential motion in state court under Section 440.10 based upon newly discovered evidence. The Court granted that application on September 6, 2011. On November 15, 2011, Petitioner's counsel reported the results of his investigation and stated that it had reached an impasse. The Court issued an Order on November 28, 2011 stating that, in light of Petitioner's November 15, 2011 letter, the Court considered the petition to be fully submitted. At oral argument, the Court confirmed that Petitioner was not requesting any additional time to further investigate his claims.

U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

## III. DISCUSSION

For the reasons discussed below, this Court denies in part, and grants in part, the relief sought by Petitioner. Petitioner's argument that there was insufficient evidence for a rational jury to conclude beyond a reasonable doubt that he possessed the requisite *mens rea* for a conviction of Manslaughter in the First Degree is procedurally barred and, in the alternative, fails on the merits. A rational jury, viewing the evidence presented at trial in the light most favorable to the prosecution, could have concluded beyond a reasonable doubt that petitioner intended to inflict serious physical injury on Valle. Petitioner's claim that the County Court improperly advocated on behalf of the State to get Petitioner to enter into a plea agreement is also without merit because Petitioner has failed to demonstrate any constitutional violation based upon the statements, including a failure by Petitioner to demonstrate any prejudice from the County Court's statements given that Petitioner did not plead guilty. Petitioner's argument that his sentence was excessive is also without merit as

the sentence was within the permitted guidelines range. However, Petitioner's claim that the state court unreasonably applied clearly established federal law in connection with his vindictive sentence claim is meritorious and requires relief unless the state court re-sentences the Petitioner in the next 90 days. The Court addresses each claim in turn.

### A. Sufficiency of the Evidence Claim

Petitioner's claim that, because he was intoxicated on the night of Valle's death, there was insufficient evidence to support a conviction for Manslaughter in the First Degree is procedurally barred and, in the alternative, is without merit.

#### 1. Procedural Default

A petitioner's federal claims may be procedurally barred from habeas corpus review if they were decided at the state level on "adequate and independent" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729-33 (1991). In such a case, a federal habeas court will defer to the "[s]tate's interest in enforcing its laws." *Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir. 1999) (quoting *Coleman*, 501 U.S. at 730-31). The procedural rule at issue is adequate if it is "firmly established and regularly followed by the state in question." *Id.* at 77. To be independent, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case," *Harris v. Reed*, 489 U.S. 255, 261 (1989) (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)), by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar." *Id.* at 263 (internal quotations omitted). If it determines that a claim is procedurally barred, a federal habeas court may not review the claim on the merits unless the petitioner can demonstrate both

cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Coleman*, 501 U.S. at 750 (citations omitted). A miscarriage of justice results only in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Petitioner's insufficiency of the evidence claim is procedurally defaulted because a state court relied on a firmly established procedural rule to deny this claim.[10] The County Court denied Petitioner's motion to vacate the jury's verdict, concluding that Petitioner failed to raise on direct appeal the issue of intoxication

affecting his mental state for purposes of a conviction of Manslaughter in the First Degree. On Petitioner's post-conviction motion to vacate the jury's verdict, he argued, as he does here, that his own intoxication on the night of the killing rendered him incapable of possessing the intent necessary to support a conviction for First-Degree Manslaughter. As a result, Petitioner contends, the State failed to satisfy its burden of proof with respect to Petitioner's mental state. In denying this motion, the County Court concluded that "although sufficient facts appear[ed] on record to have permitted review," Petitioner "failed to raise the issue on direct appeal" of his conviction. (Resp.'s Ex. 2, County Court Order Dated Sept. 1, 2009, Aug. 26, 2010, ECF No. 8-4.) Noting that "[t]he purpose of a 440.10 [motion] is to advise the Court of facts that were unknown at the time of the judgment," the County Court rejected Petitioner's legal insufficiency claim as unpreserved since it relied entirely on matters of record being improperly raised for the first time. *Id.* Failure to preserve an issue for state appellate review by not raising it on direct appeal is clearly an adequate and independent procedural ground recognized in New York and one on which the County Court relied in denying Petitioner's motion to vacate judgment.[11] *See, e.g.*, *People v. Cooks*, 67 N.Y.2d 100, 103-04 (N.Y. 1986) (recognizing

---

[10] The Court deems Petitioner's sufficiency of the evidence claim exhausted, but procedurally barred. The AEDPA provides that a federal court may not grant a writ of habeas corpus unless the petitioner has properly exhausted all of her state court remedies. *See* 28 U.S.C. § 2254(b)(1)(A). Thus, "when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). In the instant case, Petitioner's insufficiency of the evidence claim is exhausted, but procedurally barred, because he failed to raise it on direct appeal and "no longer has any state remedies available to him." *Calvo v. Donelli*, No. 06-CV-1794 (JFB), 2007 WL 1288098, at *9 (E.D.N.Y. Apr. 30, 2007) (concluding that a claim was exhausted but procedurally barred where it was clear that a state court would have to deny a motion to vacate judgment on that claim based on petitioner's failure to raise the issue on direct appeal).

[11] The Court notes that Petitioner failed to assert his intoxication as a defense to the charges against him until April of 2009 – fully four years after his conviction and nearly six years after the death of Valle. By the time Petitioner sought to raise his drunkenness as a defense, he had already been convicted, sentenced, denied appellate relief, and further denied leave to appeal by the New York Court of Appeals. The Court agrees with the County Court's assessment of Petitioner's claim, namely, that he "was aware of his level of intoxication on the night of the assault as well as his mental state at the time of the stabbing." (Resp.'s Ex. 2, County Court Order Dated Sept. 1, 2009, Aug. 26, 2010, ECF No. 8-4.)

that the rule disallowing matters of record to be raised on a 440.10 motion is designed "to prevent CPL 440.10 from being employed as a substitute for direct appeal when defendant was in a position to raise an issue on appeal or could readily have raised it on appeal but failed to do so."); *see also People v. Jossiah*, 769 N.Y.S.2d 743 (App. Div. 2003); *cf. Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996) (finding that failure to preserve issue for appeal was adequate and independent state law ground precluding federal habeas review). This is true even though, in its Order denying the motion, the County Court went on to address Petitioner's claim on the merits in the alternative. *See id.* at 724-25; *see also Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) ("[E]ven when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted.").

Federal habeas review of Petitioner's insufficiency of the evidence claim is precluded. Petitioner has demonstrated neither "cause and prejudice" for his procedural default nor that failure to consider the claim will result in a miscarriage of justice. In his petition and memorandum of law, Petitioner has wholly failed to explain why he did not raise on direct appeal the effect of intoxication on the intent element of First Degree Manslaughter. Nor has he explained how failure to consider this issue would result in a miscarriage of justice. The Court has independently analyzed the record and concludes that no miscarriage of justice would result. Accordingly, Petitioner's insufficiency of the evidence claim is procedurally defaulted.

2. Merits Analysis

In an abundance of caution, the Court concludes that, even if Petitioner's sufficiency of the evidence claim was not procedurally barred, it would not warrant habeas relief on the merits. As noted above, Petitioner argues that the evidence was legally insufficient to support his conviction of Manslaughter in the First Degree because "involuntary intoxication rendered petitioner incapable of possessing the culpable mental state necessary to prove the intent of the charge." (Pet. at 3.) After a careful review of the record, the Court concludes that, viewing the evidence presented at trial in the light most favorable to the prosecution, a rational jury could have found beyond a reasonable doubt that Petitioner intended to cause serious physical injury to Valle, which resulted in Valle's death.

It is fundamental that a criminal conviction offends the Due Process Clause of the Fourteenth Amendment unless based "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Accordingly, a state prisoner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The question thus presented is "whether, as a matter of federal law, there was sufficient evidence for a jury to find that the prosecution proved the substantive elements of the crime as defined by state law." *See id.* at 324 & n.16; *Green v. Abrams*, 984 F.2d 41, 44-45 (2d Cir. 1993). A habeas petitioner cannot prevail on a claim of legally insufficient evidence, unless he can show that viewing the evidence in the light most favorable to the prosecution, "no rational trier of fact could

have found proof of guilt beyond a reasonable doubt." *Flowers v. Fisher*, 296 F. App'x 208, 210 (2d Cir. 2008) (quoting *Jackson*, 433 U.S. at 324). When considering the sufficiency of the evidence of a state conviction, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

Considering the evidence in the light most favorable to the prosecution and drawing all reasonable inferences in its favor, *see Mannix v. Phillips*, 619 F.3d 187, 201 n.14 (2d Cir. 2010) (quoting *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000)), the Court finds that Petitioner plainly has not satisfied his "very heavy burden." *Id.* There is no doubt here that a "rational trier of fact could have found the essential elements of [Manslaughter in the First Degree] beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. Although Petitioner challenges the sufficiency of proof of his mental state, it is abundantly clear that based on the evidence presented at trial a rational jury could have concluded beyond a reasonable doubt that Petitioner, "[w]ith intent to cause serious physical injury to another person, . . . cause[d] the death of" Valle. N.Y. Penal L. § 125.20(1) (defining Manslaughter in the First Degree). Petitioner argues that his intoxication at the time of the crime demonstrates that he could not possibly have possessed the requisite intent to commit serious physical harm to Valle. It is well-established under New York law that "voluntary intoxication can negate the *mens rea* of intent but not recklessness." *Policano v. Herbert*, 507 F.3d 111, 116-17 (2d Cir. 2007) (citing N.Y. Penal L. § 15.25 ("[E]vidence of intoxication of the defendant may be offered by the defendant whenever it is relevant to negative an element of the crime charged.")). Although, as Petitioner appears to argue, intoxication can negate the intent

element of Manslaughter in the First Degree, as the Second Circuit noted in *Policano*, "[a] reviewing court faced with a record of historical facts that supports conflicting inferences must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." 507 F.3d at 117 (citing *Jackson*, 443 U.S. at 324) (quotation marks omitted). Based on the evidence presented at trial, the Court concludes that a rational jury could have found beyond a reasonable doubt that petitioner acted with the requisite intent to commit serious physical injury that resulted in the victim's death.

As an initial matter, Petitioner does not contest that there was sufficient evidence presented at trial for a rational trier of fact to conclude that Valle died after being stabbed by Petitioner. Petitioner solely takes issue with the sufficiency of the evidence as to his intent in stabbing Valle. In any event, the Court concludes that there was sufficient evidence presented at trial for a rational jury to conclude beyond a reasonable doubt that Petitioner stabbed Valle, which resulted in Valle's death. At trial, evidence was presented that Petitioner physically fought with Valle at a bar – an altercation resulting in Petitioner receiving a bloody nose and being escorted out of the bar. Hours later Valle was found dead by police a relatively short distance from the scene of the fight with Petitioner. The evidence further demonstrated that Petitioner was arrested in Miami while disembarking a Greyhound bus originating in Hempstead. Petitioner then provided a false name when apprehended. Additionally, a police search of Petitioner's workstation at his place of employment yielded a dagger, the dimensions of which resembled the fatal stab wound to Valle's chest and which contained traces of Valle's blood. Based on this evidence, a rational jury could conclude

beyond a reasonable doubt that Petitioner stabbed Valle.

With respect to the issue of Petitioner's intent, although it was clear at trial that Petitioner had been drinking on the night of Valle's death, a rational jury could have concluded beyond a reasonable doubt that Petitioner attacked Valle with the intent to cause him serious physical injury, killing him in the process. The testimony of Petitioner's cousin and co-worker revealed incriminating statements made by Petitioner the day after Valle's death recounting that he stabbed someone after fighting with him in a bar. Furthermore, evidence was presented with respect to the extreme force with which Valle was stabbed. Valle was stabbed twice. (T. 995, 1000.) The wound determined by the Nassau County Medical Examiner to be fatal measured five inches deep – with a blade that was four inches long – and penetrated several of Valle's ribs, his heart and his lung. (T. 995-99.) Viewing all of this evidence in the light most favorable to the prosecution, a rational jury could have concluded beyond a reasonable doubt that Petitioner intended to inflict serious physical injury on Valle regardless of any intoxication, evidenced by the number of times Valle was stabbed, the sheer force necessary to inflict the wounds suffered by the victim, and by the fact that Petitioner was able to recount in detail the events that took place at and after the bar fight to multiple witnesses.

In sum, the Court concludes that a rational jury could have concluded beyond a reasonable doubt that Petitioner possessed the requisite intent to cause serious physical injury to Valle, who died as a result of the wounds inflicted upon him. It was for the jury, not this Court, to weigh conflicting evidence of Petitioner's intent. Viewing the evidence presented at trial in the light most favorable to the prosecution, the evidentiary record here certainly supports a conclusion beyond a reasonable doubt that Petitioner possessed the requisite intent for Manslaughter in the First Degree. *See, e.g.*, *Policano*, 507 F.3d at 117 (reversing the district court's grant of habeas relief, concluding that it was for the jury and not the court to weigh "conflicting inferences" of intent and that the court must presume on appeal that any conflicts were resolved by the jury in favor of the prosecution in convicting petitioner of depraved indifference murder); *see also Gaskin v. Graham*, No. 8-CV-1124 (JFB), 2009 WL 5214498, at *7-8, *11 (E.D.N.Y. Dec. 30, 2009) (noting that "when faced with a record of historical facts that supports conflicting inferences, this Court must presume . . . that the trier of fact resolves any such conflicts in favor of the prosecution, and must defer to that resolution[,]" and concluding that a rational jury could have concluded beyond a reasonable doubt that the petitioner did not have the *mens rea* for intentional murder but convicted petitioner of depraved indifference murder (citations and internal quotation marks omitted)).

## B. Claim Regarding Court's Involvement in Plea Bargain

Petitioner claims that the County Court's pre-trial remarks regarding his opportunity to plead guilty constituted impermissible interference with his right to a trial. Essentially, Petitioner asserts that the County Court became an "advocate" on behalf of the State and gave him "incorrect or untrue immigration advice" in an attempt to get Petitioner to plead guilty. (Pet.'s Mem. of Law at 6, Nov. 19, 2010, ECF No. 15-2.) The Appellate Division concluded that this contention was without merit. *See Izaguirre*, 856 N.Y.S.2d at 887. The state court's

conclusion was not contrary to, or an unreasonable application of, clearly established federal law.

As a threshold matter, "[c]ourts have long recognized that trial judges are entitled to encourage guilty pleas by imposing on a defendant who pleads guilty a lesser sentence than would have been imposed had the defendant stood trial." *United States v. Cruz*, 977 F.2d 732, 733-34 (2d Cir. 1992). "[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system," *Blackledge v. Allison*, 431 U.S. 63, 71 (1977), and, though a criminal defendant may object to a judge's encouragement of his pleading guilty, "not every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is invalid. Specifically, there is no *per se* rule against encouraging guilty pleas," *Corbitt v. New Jersey*, 439 U.S. 212, 218-19 (1978). To be sure, "the breadth of discretion that our country's legal system vests in prosecuting attorneys carries with it the potential for both individual and institutional abuse. And broad though that discretion may be, there are undoubtedly constitutional limits upon its exercise." *Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978) Nevertheless, "in the 'give-and-take' of plea bargaining" there is no element of impropriety so long as the accused is free to accept or reject the prosecution's offer. *Id*. at 363.

Moreover, as the Second Circuit has explained,

> Although federal judges are prohibited from participating in plea bargaining, *see* Fed. R. Crim. P. 11, this blanket prohibition does not apply to state judges. *See, e.g.*, *Miles v. Dorsey*, 61 F.3d 1459, 1466 (10th Cir. 1995) (stating that Rule 11 does not apply to state courts and "does not necessarily establish a constitutional prohibition" (quoting *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980), *cert. denied*, 454 U.S. 840, 102 S. Ct. 148, 70 L.Ed.2d 123 (1981)) (collecting cases).

In New York State courts, a trial judge is permitted to participate in plea negotiations with criminal defendants. *People v. Fontaine*, 28 N.Y.2d 592, 268 N.E.2d 644, 644, 319 N.Y.S.2d 847 (1971); *see also People v. Signo Trading Int'l Ltd.*, 124 Misc. 2d 275, 277, 476 N.Y.S.2d 239, 241 (N.Y. City. 1984) ("In the absence of prejudice against or prejudgment of a defendant, there is no reason for a judge [who has participated in plea discussions] to disqualify himself."). While participating in plea negotiations, a judge is permitted to discuss the possible sentencing repercussions of a defendant's choice to go to trial rather than plead guilty. *People v. Zer*, 276 A.D.2d 259, 259, 714 N.Y.S.2d 257, 257 (1st Dep't 2000) ("The court was not acting in a coercive manner when it reminded defendant of the scope of sentencing available in the event of a conviction at trial.").

*McMahon v. Hodges*, 382 F.3d 284, 289 n.5 (2d Cir. 2004); *see also Flores v. Estelle*, 578 F.2d 80, 85 (5th Cir. 1978) ("a state judge's participation in plea bargaining does not per se violate any federal constitutional provision.").

In the instant case, although the wording of the comments by the trial judge regarding the plea negotiations were ill-advised, this Court finds no evidence of a constitutional violation warranting habeas relief. *See, e.g.*, *Smith v. McGinnis*, No. 02 Civ. 1185(HB), 2003 WL 21488090, at *3 (S.D.N.Y. June 25, 2003) (the judge's "conduct and remarks did not create the kind of fundamental unfairness required by the Supreme Court in order to show deprivation of due process"). First, the comments with which Petitioner now takes issue were prompted by his own lawyer's lengthy statement on the record reflecting his belief that Petitioner should accept the State's offer. Defense counsel made clear that Petitioner's decision to proceed to trial followed competent and strenuous advice by defense counsel to the contrary, as well as repeated attempts to disabuse Petitioner of his own mistaken belief that he could not be convicted under the law because of the absence of eyewitnesses to the crime. Further, the trial judge made clear to Petitioner that she did not know whether Petitioner was guilty, and that only Petitioner knew what was in his best interest. With respect to his immigration status, the County Court told Petitioner that if he is convicted after trial, he would "probably" be deported to his native Honduras after serving his sentence and that "[y]our best chance is . . . to enter a plea . . . and hope they will forget about your immigration hold." (T. 8-9.) Once again, these comments do not suggest a pre-trial bias on the part of the County Court, but rather are an attempt on the part of the judge to advise Petitioner of the potential immigration consequences of his choices which, as the judge points out, could result in deportation whether or not Petitioner pleads guilty. *See, e.g.*, *Zhang v. United States*, 506 F.3d 162, 169 (2d Cir. 2007) (prior to his entering into a guilty plea, the sentencing court was solely obligated to put appellant "on notice that his guilty plea had potential immigration consequences, and provided an opportunity to pursue those consequences more fully with his attorney or with an immigration specialist," concluding that where the sentencing judge indicated that there was a "possibility" that appellant would be deported was sufficient notice and was not inaccurate or prejudicial even though it was not clear at the time of the sentencing that appellant could actually be deported).

The record is similarly bereft of any indication that the court's comments, made outside the presence of the jury, had any continuing or permeating effect in any way on the character of the trial proceedings, including the judge's rulings during the course of the trial. In other words, there is no evidence of any prejudice Petitioner allegedly suffered during the trial as a result of the judge's comments.[12] There can be no question that Petitioner in the instant case was not only well-counseled, but that he understood the choices that were presented to him and freely rejected the State's offer. *See Corbitt v. New Jersey*, 439 U.S. 212, 225 (1978). Thus, his ultimate decision to forgo the plea deal presented to him and proceed to trial eliminated any possible prejudice that could have resulted from the County Court's remarks to the extent Petitioner

---

[12] At oral argument, the Court confirmed with Petitioner's counsel that Petitioner was not claiming that any rulings by the trial judge during the trial exhibited any bias or retaliation against Petitioner because of his refusal to plead guilt. In any event, the record contains no evidence of bias or retaliation by the judge during the trial.

believes that the judge was improperly trying to encourage him to plead guilty. Petitioner disregarded any alleged efforts to persuade him to plead guilty, rejected the State's plea offer despite ardent warnings from his lawyer, and exercised his right to a trial by jury, as he was constitutionally permitted to do. Given the absence of any evidence of any fundamental unfairness or any other constitutional violation (including the lack of any showing of prejudice to Petitioner), the allegedly improper involvement in plea negotiations by the trial judge does not warrant habeas relief.

In sum, Petitioner's theory that the County Court improperly became an advocate on behalf of the State in attempting to persuade Petitioner to enter a plea agreement does not provide a basis for habeas relief under the circumstances of this case. The County Court attempted to explain to Petitioner the consequences of entering a plea as compared to proceeding to trial, making it clear that the court did not hold a view as to Petitioner's guilt or innocence. Petitioner did not plead guilty following the judge's statements and, thus, cannot claim he was improperly coerced in some way. Furthermore, there is no evidence that the Petitioner's trial was somehow affected by the County Court's remarks. Accordingly, in sum, this Court concludes that, in assessing Petitioner's claim, the Appellate Division's conclusion that it was without merit was not contrary to, or an unreasonable application of, clearly established federal law.

C. Excessive and Retaliatory Sentence Claim

Lastly, Petitioner argues that the County Court imposed a harsh, excessive and retaliatory sentence. Specifically, Petitioner claims that the sentence was harsh and excessive because it went beyond the term recommended by the State – which was "not less than fifteen years" (S. 3.) – and was imposed in retaliation for the Petitioner's refusal to take the State's plea bargain. The Appellate Division summarily rejected Petitioner's claim, stating that, "[t]he sentencing minutes indicate that the Supreme Court considered the appropriate factors in sentencing the defendant, and we find that the sentence imposed was not excessive." *Izaguirre*, 856 N.Y.S.2d at 887 (citation omitted).[13] This Court concludes that the

---

[13] Because the Appellate Division summarily rejected Petitioner's claim on the merits without explanation, this Court focuses on the ultimate decision of the state court, rather than on the court's reasoning. *See Sellan v. Kuhlman*, 261 F.3d 303, 311-12 (2d Cir. 2001) ("when a state court fails to articulate the rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the federal court will focus its review on whether the state court's ultimate decision was an 'unreasonable application' of clearly established Supreme Court precedent."). The Court notes that it has some concern as to whether the Appellate Division addressed this vindictive sentencing claim at all. More specifically, in its brief Order affirming the conviction, the Appellate Division stated that "we find that the sentence imposed was not excessive." *Izaguirre*, 51 A.D. 3d at 946. However, Point Two of Petitioner's appellate brief was that the sentence "was harsh, Excessive, *and retaliatory for the appellant exercising [h]is right to a trial.*" Defendant-Appellant's Brief, *People v. Izaguirre*, 51 A.D.3d 946 (2008) (No. 2005-09068), 2008 WL 3832152, at *50 (emphasis added). The Appellate Division did not mention the Petitioner's separate argument that the sentence was retaliatory or vindictive. Although the court did say that it finds "the defendant's remaining contention is without merit," *Izaguirre*, 51 A.D.3d at 946, the Court believes that sentence is a reference to Point One of Petitioner's appellate brief, which separately argued that his entire conviction should be vacated because "the County Court Improperly Attempted to Persuade the Appellant to enter a plea of guilty." Defendant-Appellant's Brief, *People v. Izaguirre*, 51 A.D.3d 946 (2008) (No. 2005-09068), 2008 WL 3832152, at *47. Thus, because the Appellate Division's Order only referenced a singular (rather than plural) "remaining contention," it is possible that it never

Appellate Division's determination that the sentence imposed was not harsh or excessive was not contrary to, nor an unreasonable application of, clearly established federal law. However, the Court further concludes that the Appellate Division's determination on the vindictive sentencing claim – namely, that it did not require resentencing – was an unreasonable application of clearly established federal law as articulated by the Supreme Court. The Court will address Petitioner's sentencing claims in turn.

As a preliminary matter, to the extent that Petitioner relies on state law as a ground for an excessive sentence claim, such a claim is not cognizable on habeas review. *See, e.g.*, *Wilson v. Ercole*, No. 06-cv-533 (DLI), 2009 WL 792089, at *11 (E.D.N.Y. Mar. 23, 2009) ("On his direct appeal, petitioner . . . did not contend that this sentence violated his constitutional rights, but instead urged the Appellate Division to reduce the sentence under C.P.L. § 470.15(6)(b), which gives the state court broad plenary power to modify a sentence that is unduly harsh or severe, though legal . . . . Given that this claim rests exclusively on state law, the court may not review it under 28 U.S.C. § 2254(d)." (internal citations omitted)); *Morris v. Kuhlmann*, No. 84-cv-2293, 1984 WL 624, at *2 (S.D.N.Y. July 18,1984) ("The question of using a Canadian conviction as a basis for sentencing as a second felony offender is a matter of state law and does not present a federal question suitable for federal habeas corpus review.").

Furthermore, to the extent Petitioner argues that his sentence was excessive and therefore cruel and unusual punishment under the Eighth Amendment, Petitioner's claim is not reviewable by this Court since, "when a sentence is within [the range of years prescribed by law], a claim of excessive punishment does not present a constitutional question necessary for habeas corpus reversal." *Underwood v. Kelly*, 692 F. Supp. 146, 152 (E.D.N.Y. 1988), *aff'd* 875 F.2d 857 (2d Cir. 1989); *see also White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992). Petitioner was convicted by a jury of Manslaughter in the First Degree, a class B violent felony punishable by as many as twenty-five years in prison. *See* N.Y. Penal L. §§ 120.20(1), 70.02(a)(1), (a)(3). Thus, the twenty-five year sentence imposed by the County Court was within the statutory range and Petitioner's claim that it is excessive is beyond this Court's review. Similarly, to the extent Petitioner is also challenging his sentence of five years of post-release supervision, that is also within the permissible range under New York law for a class B violent felony.[14] *See* N.Y. Penal Law § 70.45(1), (2).

However, the final aspect of Petitioner's claim, that his sentence was in retaliation for his refusal to enter into a plea bargain, raises a different constitutional question and the state court record on that issue gives this Court great constitutional concern even under the deferential standard of review for habeas petitions. Petitioner argues that the trial court essentially punished him for exercising his Sixth Amendment right to a jury trial.

---

addressed the vindictive sentencing claim. However, the Court assumes, for purposes of this petition, that the Appellate Division summarily rejected the vindictive sentencing claim on the merits in its decision.

---

[14] In any event, even if the Court could review under the Eighth Amendment a sentence within the range prescribed by state law, the Court would find no basis in this case to conclude that Petitioner's sentence was grossly disproportionate to the crime committed so as to violate the Eighth Amendment given the nature of the criminal activity – namely, a First-Degree Manslaughter conviction involving a stabbing of the victim in a bar – that was the subject of the conviction in the instant case.

Specifically, Petitioner contends that his sentence was the result of his not accepting the plea offer, which the trial court judge allegedly preferred, and that the lack of reasoning given by the same judge for imposing the maximum sentence, which was beyond what the prosecution had recommended, further demonstrates this intent to punish.

A sentence is unconstitutionally vindictive if it imposes greater punishment because the defendant exercised a constitutional right, such as the right to jury trial or the right to appeal. *Wasman v. United States*, 468 U.S. 559, 567-68 (1984) (citing, *inter alia*, *North Carolina v. Pearce*, 395 U.S. 711, 725 (1969)). Claims of unconstitutional vindictiveness by the court were initially addressed by the Supreme Court in *Pearce* in the context of a higher sentence after a new trial. *Pearce* held that the Due Process Clause of the Fourteenth Amendment "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." 395 U.S. at 725; *accord, e.g.*, *Bordenkircher v. Hayes*, 434 U.S. 357, 362 (1978). The Supreme Court in *Alabama v. Smith*, 490 U.S. 794 (1989), summarized its precedents on this issue:

> "In order to assure the absence of such a motivation [of vindictiveness], we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for him doing so must affirmatively appear." [*Pearce*, 395 U.S. at 726.] Otherwise, a presumption arises that a greater sentence has been imposed for a vindictive

purpose – a presumption that must be rebutted by "'objective information . . . justifying the increased sentence.'" *Texas v. McCullough*, 475 U.S. 134, 142 (1986) (quoting *United States v. Goodwin*, 457 U.S. 368, 374 (1982)).

*Smith*, 490 U.S. at 799. *Accord, e.g.*, *Correia v. Hall*, 364 F.3d 385, 388 (1st Cir. 2004) ("In the event a criminal defendant successfully appeals his conviction and the same trial judge imposes a stiffer sentence following a retrial, the presumption arises that the harsher sentence was a product of judicial vindictiveness in response to the defendant's rightful recourse to the appellate process; yet this presumption is rebuttable provided the record contains objective evidence which adequately explains the more severe sentence.").

However, the *Pearce* framework was not limited by the Supreme Court to sentencings after re-trials, but rather has been applied by the Supreme Court to other situations, such as claims of prosecutorial vindictiveness in connection with plea negotiations. *See, e.g.*, *United States v. Goodwin*, 457 U.S. 368, 373-383 (1982); *Bordenkircher v. Hayes*, 434 U.S. at 362. Although the Supreme Court made clear in those cases that it would be difficult to find such a presumption against a prosecutor in the context of the regular give-and-take of plea negotiations, it nonetheless made clear that this same rule applies to all vindictiveness claims, regardless of whether it involved a prosecutor or judge, or whether it occurred pre-trial, at trial, at sentencing, or at re-sentencing after a new trial. In other words, even though the ability to demonstrate a "reasonable likelihood of vindictiveness" to invoke the presumption might be more difficult in one situation as opposed to another, the rule is the same.

Perhaps one of the clearest articulations of this well-established rule was contained in *Goodwin* when the Supreme Court stated: "[I]n certain cases in which action detrimental to the defendant has been taken after the exercise of a legal right, the Court has found it necessary to 'presume' an improper vindictive motive. Given the severity of such a presumption, however – which may operate in the absence of any proof of an improper motive and thus may block a legitimate response to criminal conduct – the Court has done so only in cases in which a reasonable likelihood of vindictiveness exists." 457 U.S. at 373. Therefore, for purposes of habeas review, this Court concludes that this *Pearce* standard was clearly established federal law, as articulated by the Supreme Court, at the time of the state court decision in the instant case. The fact that the rule has not been applied by the Supreme Court to the specific facts of this type of case is of no legal significance to Petitioner's claim here on habeas review, given that the Supreme Court clearly articulated a generalized standard that is to be applied to all vindictiveness claims. *See Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir. 2002) ("federal law, as defined by the Supreme Court, may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context"). Accordingly, the *Pearce* standard must be applied to Petitioner's vindictive sentencing claim.

Other courts have reached the same conclusion that the *Pearce* standard is clearly established for purposes of habeas review.[15]

For example, in *Correia*, the First Circuit held that "[t]he same [*Pearce*] presumption may arise when a criminal defendant rejects a plea agreement – and with it the prospect of a more lenient sentence – and elects instead to exercise his constitutional right to a jury trial." *Correia*, 364 F.3d at 388 (citing *Johnson v. Vose*, 927 F.2d 10, 11 (1st Cir. 1991)); *accord Jones v.*

---

[15] Contrary to Respondent's contention, this Court is not precluded from considering lower federal court decisions to help illuminate what was clearly established by the Supreme Court (not lower courts) at a particular point in time, as well to assist in evaluating whether or not the state court's application of federal law was reasonable. *See, e.g., Sedillo v. Hatch*, 445 Fed. App'x 95, 103 (10th Cir. 2011) ("To be sure, we may look to the precedent of the lower federal courts in attempting to discern when a state court's decision is contrary to, or involves an unreasonable application of, clearly established federal law as defined by the Supreme Court."); *Casey v. Moore*, 386 F.3d 896, 907 (9th Cir. 2004) ("Although lower federal court and state court precedent may be relevant when that precedent illuminates the application of clearly established federal law as determined by the United States Supreme Court, if it does not do so, it is of no moment."); *Ouber v. Guarino*, 293 F.3d 19, 26 (1st Cir. 2002) ("The AEDPA also requires that the relevant legal rule be clearly established in a Supreme Court holding, rather than in dictum or holdings of lower federal courts . . . This does not mean, however, that other federal court decisions are wholly irrelevant to the reasonableness determination." (citation omitted)); *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 890 (3d Cir. 1999) (en banc) ("[W]e do not believe federal habeas courts are precluded from considering decisions of the inferior federal courts when evaluating whether the state court's application of the law was reasonable."); *see also Shiwlochan v. Portuondo*, 345 F. Supp. 2d 242, 263 (E.D.N.Y. 2004) (report and recommendation) ("federal habeas courts are not precluded from considering the decisions of inferior federal courts, as helpful amplifications of Supreme Court precedent, in evaluating whether the state court's application of the law was reasonable" (citation and internal quotation marks omitted)); *accord Durant v. Strack*, 151 F. Supp. 2d 226, 239 n.8 (E.D.N.Y. 2001). However, this Court emphasizes that, notwithstanding its consideration of these lower court decisions as helpful guidance, it understands that it is only clearly established federal law as articulated by the United States Supreme Court (rather than a lower court) that is applicable on habeas review and this Court reaches its conclusion independent of any lower court decisions cited in this Memorandum and Order.

*Poole*, No. 05-cv-0886, 2010 WL 1949599, at *36 (W.D.N.Y. May 13, 2010). "'[T]he evil the [*Pearce*] Court sought to prevent' was not the imposition of 'enlarged sentences after a new trial' but 'vindictiveness of a sentencing judge.'" *Smith*, 490 U.S. at 799 (quoting *Texas v. McCullough*, 475 U.S. 134, 138 (1986) and citing *Chaffin v. Stynchcombe*, 412 U.S. 17, 25 (1973) (holding that the *Pearce* presumption was not designed to prevent the imposition of an increased sentence on retrial "for some valid reason associated with the need for flexibility and discretion in the sentencing process," but was "premised on the apparent need to guard against vindictiveness in the resentencing process")). Similarly, in appeals on federal cases, courts also have noted the existence of this well-settled Supreme Court rule. *See, e.g.*, *United States v. Mazzaferro*, 865 F.2d 450, 458 (1st Cir. 1989) ("One of the fundamental principles of our jurisprudence is that a defendant cannot be punished for exercising a constitutional right and that vindictiveness is to play no role in sentencing of defendants.").

As noted above, the Supreme Court has restricted application of the *Pearce* presumption to those situations in which there is a "'reasonable likelihood,' *United States v. Goodwin*, [457 U.S. at 373,] that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority." *Smith*, 490 U.S. at 799. Absent a "reasonable likelihood" of "actual vindictiveness," "the burden remains upon the defendant to prove actual vindictiveness[.]" *Id.* (citing *Wasman*, 468 U.S. at 569).

Thus, the threshold question is whether the well-settled *Pearce* presumption should have been applied to the particular facts of this case. After carefully reviewing the record, there is no question that the presumption should be applied. In the instant case, a reasonable likelihood of actual vindictiveness exists as before the trial even began, the County Court plainly told Petitioner the sentence he would receive – namely, the non-mandatory, statutory maximum – if he were convicted at trial. Before being presented with any of the state's evidence, hearing any of Petitioner's defense, or reviewing a pre-sentence report regarding Petitioner, the County Court explicitly stated to Petitioner, "Mr. Izaguirre, do you understand that if you are found guilty after this trial you will do 25 years in prison?" (T. 7.) Following the jury rendering a guilty verdict, the County Court did, in fact, sentence Petitioner to 25 years' imprisonment. Although it is possible that no actual vindictiveness existed on the part of the County Court during the sentencing process, the pre-trial announcement that Petitioner would receive the statutory maximum sentence followed by the post-trial issuance of the promised statutory maximum sentence (which was discretionary, rather than mandatory) certainly raises a reasonable likelihood of actual vindictiveness.

Essentially, upon hearing that Petitioner was reluctant to accept the state's latest plea offer, which would result in a sentence of ten years or less, the County Court announced that if the Petitioner elected to go to trial and were convicted, the Court would sentence him to the statutory maximum, twenty-five years' imprisonment. Such a statement, made in connection with Petitioner's election to go to trial, unquestionably is sufficient to trigger the *Pearce* presumption by raising a reasonable likelihood of actual vindictiveness.[16]

---

[16] As the Second Circuit has emphasized in the context of the Sixth Amendment, "[t]he claim under the Sixth Amendment is premised entirely upon [the trial judge's] alleged threat of a more severe sentence should [the petitioner] go to trial. If true, this would establish a per se violation of the defendant's Sixth Amendment right to

In attempting to defend the propriety of the County Court's pre-trial statement regarding Petitioner's future sentence, Respondent first argues that the statement was "motivated – and even invited – by defense counsel's expressed concern about his client's seeming lack of understanding about the applicable law and the situation he faced, and not by an agenda of vindictiveness to punish petitioner for wanting to proceed to trial." (Resp.'s Letter at 7, July 22, 2011, ECF No. 30.)  The Court agrees that defense counsel did raise his concern regarding Petitioner's possible misapprehension of the state's standard of proof, but such concern was addressed by the County Court's statement that, "[t]he prisons are filled with people who were convicted of crimes where there was no eye witness . . . ." (T. 8.)  Defense counsel's concern was not addressed by, and did not invite, the County Court's additional, unequivocal statement that Petitioner would receive a 25-year sentence upon conviction.

Respondent next argues that, taken in the context of the concurrent remarks made by the County Court, the pre-trial statement regarding Petitioner's sentence was not a threat, but rather "an advisement of the plea offer and the potential consequences that petitioner faced if he went to trial." (Resp.'s Letter at 7, July 22, 2011, ECF No. 30.) The Supreme Court has held that "there is no *per se* rule against encouraging guilty pleas" and that "not every burden on the exercise of a constitutional right, and not every pressure or encouragement

to waive such a right, is invalid." *Corbitt*, 439 U.S. at 218-20.  In this instance, however, the County Court's statement was not merely apprising Petitioner of the potential consequences of his election to go to trial; the County Court definitively stated that Petitioner would receive a non-mandatory 25-year sentence upon conviction at trial.[17]  Moreover, the context of that statement provides further support for Petitioner's vindictive sentencing claim.  Other statements by the County Court during that colloquy included the following: (1) "The prisons are filled with people who were convicted of crimes where there was no eye witness, and they are filled with people who feel they were wrongfully convicted because there wasn't enough evidence, or who have convinced themselves that there wasn't enough evidence.  Those people are not necessarily the kind of people you want to spend the next 20 years of your life with."; (2) "You are a very young man.  You also have an immigration hold.  You will probably, if you get convicted, never see daylight again, because you will probably sit in a New York State facility for at least 20 years and then be deported to . . . Honduras, and I don't know what they will do to you in Honduras after having served a prison sentence here."; and (3)

_____

[17]

Unlike the cases cited by Respondent, the County Court failed to characterize the 25-year sentence as one that Petitioner "could" face, *see, e.g.*, *Williams v. Lacy*, No. 96 Civ. 0868 AGS, 1997 WL 40922, at *2 (S.D.N.Y. Jan. 31, 1997) (petitioner alleged that trial court told him that he could be sentenced as a persistent felony offender if convicted after a trial), or even one that Petitioner would "likely" receive.  *See e.g.*, *Oyague v. Artuz*, 274 F. Supp. 2d. 251, 258 (E.D.N.Y. 2003) (petitioner alleged that trial court told him that if he went to trial and were convicted he would spend the rest of his life in prison because he would be facing a likely 65 years to life sentence); *Spikes v. Graham*, No. 9:07-CV-1129 (DNH/GHL), 2010 WL 4005044, at *7 (N.D.N.Y. July 14, 2010) (petitioner alleged that trial court told him that he would likely be found guilty and receive a 25-year sentence if he proceeded to trial).

_____

a trial, and require resentencing before a different judge." *Fielding v. LeFevre*, 548 F.2d 1102, 1106 (2d Cir. 1977) (citing, *inter alia*, *Blackledge v. Perry*, 417 U.S. 21, 28 (1973)).  Although analyzing the claim under the Sixth Amendment, the Second Circuit cited a Supreme Court case decided under the Due Process Clause (*Blackledge*), and this Court believes that the analysis in *Fielding* applies with equal force in this context under the Due Process Clause.

"Your best chance is, if you wish to plead guilty, is to enter a plea, take the ten years, and hope they will forget about your immigration hold . . . ." (T. 7-9.) Such statements certainly do not suggest that the County Court's previous statement was one setting forth only a possible sentence, rather than the intended sentence. In short, examined in the context of the County Court's subsequent pre-trial remarks, the County Court's original statement reasonably conveys the ostensible message that the County Court had predetermined that Petitioner would receive a much more severe sentence should Petitioner invoke his right to trial and further supports the application of the *Pearce* presumption.[18]

Although Respondent attempts to point to the pre-trial references by the court to 20 years as an indication that a 25-year sentence had not been pre-determined despite the explicit statement, that argument is unpersuasive and insufficient to prevent the application of the *Pearce* presumption in this case. As noted by Petitioner, the 20-year references could easily be a reference to the actual time under New York law that Petitioner would have to serve on a 25-year sentence, rather than an indication of some other sentence being considered. Specifically, the Court notes that, in New York, credit for good behavior on a determinate sentence may not exceed one-seventh of the sentence. N.Y. Correct. Law. § 803(1)(c). Thus, a person sentenced to twenty-five years could hope to serve only about 21.5 years with a good behavior credit. It appears that, at the time of the County

Court's remarks, Petitioner had been in custody for about one year and eight months. (T. 34.) If sentenced to twenty-five years, given credit for time served and given a credit for good behavior in the future, Petitioner would serve almost exactly twenty additional years from the date of the remarks on a twenty-five year sentence. Therefore, the County Court's references to twenty years are perfectly consistent with the County Court's stated intention to sentence Petitioner to twenty-five years should he elect to go to trial.[19]

In reaching this decision, the Court emphasizes that it does not conclude that the *Pearce* presumption applies simply because the post-trial sentence exceeded a previous plea offer. Such a conclusion would be contrary to well-established Supreme Court precedent and common sense. Instead, consistent with well-settled Supreme Court jurisprudence, the Court finds that the *Pearce* presumption is warranted where the trial court stated, pre-trial, in the context of plea negotiations, that she **would** impose the non-mandatory statutory maximum if the defendant went to trial, and then imposed that sentence after trial.

Because the *Pearce* presumption applies to Petitioner at sentencing, the County Court was required to affirmatively state sufficient reasons for the sentence imposed in order to rebut the presumption that it was motivated by actual vindictiveness in imposing the maximum statutory sentence as promised. *See Wasman*, 468 U.S. at 569; *accord*, *e.g.*, *Somerville v. Hunt*, No. 08-CV-1307, 2011 WL 795073, at *10 (E.D.N.Y. Feb. 28, 2011). The County Court could have discharged this

---

[18]   Because the Court finds that the *Pearce* presumption applies and is unrebutted, the Court makes no finding with respect to whether Petitioner carried his burden of proving actual vindictiveness. *See Smith*, 490 U.S. at 799-800 (absent a reasonable likelihood of actual vindictiveness, the burden remains upon the defendant to prove actual vindictiveness).

---

[19]   In any event, it obviously would still be problematic from a constitutional standpoint if the County Court had decided prior to trial to impose a sentence of at least 20 years if the defendant elected to go to trial.

burden by indicating on the record its reasons for imposing the maximum increased sentence and its reasons were "based on objective information concerning identifiable conduct on the part of the defendant," *Pearce*, 395 U.S. at 726; *Somerville*, 2011 WL 795073 at *10, sufficient to overcome the presumption.

However, the circumstances surrounding the sentencing do not provide a sufficient basis to rebut the presumption. To the contrary, the circumstances surrounding the sentencing provide additional support for Petitioner's claim. First, even though the state requested a sentence of "no less than 15 years in prison," (S. 3.), the County Court sentenced Petitioner to 25 years' imprisonment. Second, the County Court's reasons justifying the imposition of the 25-year sentence were extremely brief:

> [Valle] was a son; he was a friend; and he was a young man just like [Petitioner] and now he will never grow old and he will never have an opportunity to have children and he will never have an opportunity to take care of his father as his father gets older.

(S. 8.) In short, the extent of the County Court's articulated justification for choosing the maximum sentence possible was that the victim was a "young man." This terse articulation of its reasoning is insufficient to overcome the *Pearce* presumption of vindictiveness under the facts of this case. Although Respondent speculates that the County Court's sentence may have been based on the violence with which the crime was committed, or the gruesome nature of the death, or the great anguish caused to the victim's family, none of these factors

affirmatively appeared in the County Court's rationale for the sentence. Moreover, the County Court did not mention, and apparently did not rely upon, any history and characteristics of Petitioner as grounds for supporting the statutory maximum.[20] *Cf. Smith v. Scully*, No. 02-CV-6329, 2003 WL 22952848, at *5 (E.D.N.Y. Oct. 16, 2003) (the fact that the trial court had reviewed a "very unfavorable report written by the Probation officer as to [the petitioner's] being a professional criminal" rendered remarks to the petitioner about the likelihood of receiving a "maximum sentence" more like a notice than threat). Therefore, there is no basis on which to find that the County Court's reasons at sentencing, or any other evidence or information in the record, were sufficient to rebut the *Pearce* presumption that the 25-year sentence was motivated by actual vindictiveness. Thus, without making any finding as to the actual reasons for Petitioner's sentence, this Court holds that the unrebutted *Pearce* presumption of actual vindictiveness requires resentencing by a different judge in this case, and any conclusion to the contrary is an unreasonable application of clearly established federal law.

In reaching this decision, this Court is aware of the recent decision by the Supreme Court explaining the standard for "objectively unreasonableness" in the context of habeas review. *See Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). In particular, in *Harrington*, the Supreme Court reiterated:

> A state court's determination that a claim lacks merit precludes federal habeas

---

[20]  In fact, during the pre-trial colloquy at issue here, the court indicated that the Petitioner had never been in "any kind of trouble before." (T. 7.)

review so long as "fairminded jurists could disagree" on the correctness of the state court's decision. *Yarborough v. Alvarado*, 541 U.S. 652, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). And, as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general rule the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Ibid.* "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Knowles v. Mirzayance*, 556 U.S. ----, ----, 129 S. Ct. 1411, 1413-14, 173 L. Ed. 2d 251 (2009) (internal quotation marks omitted).

131 S. Ct. at 786. The Court further emphasized, "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

In the instant case, this high standard has been met. The specific legal rule at issue here, first articulated in *Pearce* and applied in a number of cases over the past several decades (including, *inter alia*, *Bordenkircher v. Hayes, United States v. Goodwin*, and *Alabama v. Smith*), has been squarely established by the Supreme Court. The rule is based upon holdings, not dicta, of this nation's highest court and its application here does not require an "extension" of that rule; rather, the application here requires reference only to the core, well-established rule itself. Moreover, in this case, there is no indication that the state court applied this Supreme Court jurisprudence to the vindictive sentencing claim, and any application of such precedent to the facts of this case that resulted in rejection of the vindictive sentencing claim would be an unreasonable application under the above-referenced standard, for the reasons set forth *infra*.

The First Circuit reached a similar conclusion in *Longval v. Meachum*, 693 F.2d 236 (1st Cir. 1982). In *Longval*, the judge stated the following, *inter alia*, to defense counsel during the trial near the close of the prosecution case: "I strongly suggest that you ask your client to consider a plea, because, if the jury returns a verdict of guilty, I might be disposed to impose a substantial prison sentence." *Id.* at 237. The defendant refused to plead guilty, was convicted, and received a substantial sentence that was grossly disproportionate to a co-defendant who pleaded guilty. In granting the habeas petition on the vindictiveness sentencing claim, the First Circuit noted that "[w]hatever his actual state of mind, or purpose, we regard the judge's mid-trial interjections as susceptible of appearing from the defendant's perspective to be an attempt to coerce him to plead." *Id.* The court further clarified that, although the defendant did not plead guilty, the issue of coercion was different than the issue of a retaliatory sentence. *Id.* at 237 n.2 ("The Commonwealth argues that the fact that the

defendant continued with the trial and took the stand shows that there was no coercion. This is beside the point; it does not negate the appearance of an attempt, nor dispel the possibility of a retaliatory sentence."). Finally, applying the rule in *Goodwin*, the First Circuit found that actual vindictiveness was not required, and that a writ of habeas corpus should issue unless the defendant was resentenced within sixty days before a different judge.[21] *Id.* at 238-39; *see also Mazzaferro*, 865 F.2d at 460 ("The law is clear beyond peradventure that a sentence based on retaliation for exercising the constitutional right to stand trial is invalid. Without drawing any conclusions as to the district court's actual reasons for appellant's sentence, we believe that the appearance of retaliation is great enough on the facts of this case to require that the sentence imposed be set aside and the case remanded for sentencing by a different judge."); *United States v. Stockwell*, 472 F.2d 1186, 1187 (9th Cir. 1973) ("While we do not believe that the experienced trial judge actually punished the defendant for standing trial, the record leaves unrebutted the inference drawn by the defendant."). [22]

In sum, even under the deferential AEDPA standard, the Appellate Division's failure to find an unrebutted presumption of judicial vindictiveness at Petitioner's sentencing in the imposition of the statutory maximum, which warranted resentencing by a different judge, was an unreasonable application of clearly

---

[21]

Although Respondent notes the dissenting decision by Justice Rehnquist in the denial to grant certiorari in *Longval* because of the concern that *Longval* might be creating a new standard for when a presumption of vindictiveness applies (*see* Resp.'s Letter at 15, July 22, 2011, ECF No. 30), the First Circuit has made clear in subsequent decisions that the *Pearce* presumption would not apply simply because the post-trial sentence was longer than the plea offer, but rather where judges "explicitly linked harsher sentences to the defendants' refusal to short cut their right to a jury trial, a factor we deemed crucial [in *Longval* and *Crocker*] in establishing a reasonable likelihood of vindictiveness." *Johnson v. Vose*, 927 F.2d 10, 12 (1st Cir. 1991).

[22]

In his papers and at oral argument, respondent argued that the Appellate Division's decision was reasonable in light of *Bordenkircher v. Hayes*, 434 U.S. 357 (1978). In *Bordenkircher*, a prosecutor threatened to indict the defendant under the state's habitual criminal act if he did not plead guilty to the original crime charged, uttering a forged instrument. After the defendant refused the plea offer, the prosecutor indicted the defendant under the habitual criminal act, the jury found the defendant guilty of uttering a false instrument and found him to be a habitual criminal, and the defendant was sentenced to life in prison. The Supreme Court found that the prosecutor's conduct did not amount to a due process violation. *Id.* at 363-365. However, this Court finds *Bordenkircher* inapposite to the facts here. *Bordenkircher* addressed prosecutorial conduct in the course of plea bargaining, and not the context of a judge explicitly stating her pre-trial intention to impose the maximum penalty if a defendant exercises his constitutional right to a trial, and then imposing the maximum penalty. *See id.* at 365 ("We hold only that the course of conduct engaged in by the prosecutor in this case . . . did not violate the Due Process Clause of the Fourteenth Amendment."). Despite the holding in *Bordenkircher*, the Supreme Court reaffirmed that "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort . . . and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is patently unconstitutional." *Id.* at 363 (citation and internal quotations omitted). The Court stated, however, that "in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer," *id.*, and went on to explain the crucial role of plea bargaining in our criminal justice system. In light of the reasoning and holding of *Bordenkircher*, which centered on prosecutorial conduct, the Court finds that *Bordenkircher* does not form a reasonable basis for the Appellate Division's decision under the circumstances of this case.

established federal law as articulated by the United States Supreme Court.[23]

## IV. CONCLUSION

For the foregoing reasons, Petitioner has demonstrated a basis for relief under 28 U.S.C. § 2254 in connection with his retaliatory sentencing claim. Accordingly, a writ of habeas corpus shall issue unless, within ninety days of the date of this Memorandum and Order, Petitioner is resentenced before a judge other than the one who delivered the sentence at issue in the instant petition. Moreover, for the reasons set forth above, Petitioner's remaining grounds for habeas relief are denied. With respect to these other grounds for relief, because Petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue on these grounds. *See* 28 U.S.C. § 2253(c)(2).

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: April 25, 2012,
    Central Islip, New York

* * *

Attorneys for Petitioner are Kevin J. Keating, Law Office of Kevin J. Keating, 666 Old Country Road, Suite 501, Garden City, NY 11530, and Matthew W. Brissenden, Matthew W. Brissenden, P.C., 666 Old Country Road, Suite 501, Garden City, NY 11530. Attorneys for Respondent are Tammy J. Smiley and Andrea M. DiGregorio, Assistant District Attorneys, on behalf of Kathleen M. Rice, District Attorney, Nassau County, 262 Old Country Road, Mineola, NY 11501.

---

[23] Given the nature of Petitioner's claim and the history of this case, resentencing before a different judge is warranted to avoid even the appearance of vindictiveness or unfairness in connection with the resentencing. *See Longval*, 693 F.2d at 239 (requiring resentencing before different judge); *Somerville*, 2011 WL 795073, at *11 (same); *accord Ketchings v. Jackson*, 365 F.3d 509, 514 (6th Cir. 2004).